**William Peter VOSBERG, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–01–024–CR.**

Court of Appeals of Texas,
Fort Worth.

July 11, 2002.

Scott Brown, Fort Worth, for Appellant.

Tim Curry, Crim. District Atty.; Charles M. Mallin, Chief of Appellate Section; C. James Gibson, Alicia Cooper, Soraya Choudhry, Ass't District Attorneys, Fort Worth, for Appellee.

PANEL B: DAY, LIVINGSTON, and GARDNER, JJ.

## OPINION

ANNE GARDNER, Justice.

### I. INTRODUCTION

A jury convicted Appellant William Peter Vosberg of driving while intoxicated (DWI). The trial judge assessed Appellant's punishment at ninety days in jail probated for two years and fined Appellant four hundred and fifty dollars. Appellant appeals his conviction, raising one point. Appellant argues that the trial court erred by including in the jury charge an instruction defining reasonable doubt. We affirm.

### II. BACKGROUND

Because Appellant does not challenge the sufficiency of the evidence, only a brief recitation of the facts is necessary. On March 26, 1999, Detective Darran Gabbert of the Tarrant County Sheriff's Department stopped Appellant for speeding and crossing the center lane. After noticing Appellant using his door to steady himself as he exited the vehicle, and smelling a strong odor of alcohol on Appellant's breath, Detective Gabbert asked Appellant if he had had anything to drink. Appellant responded that he had had a few beers at the race track. Detective Gabbert then administered a series of field sobriety tests on Appellant. Detective Gabbert arrested Appellant for DWI after he exhibited clues of intoxication during four field sobriety tests.[1] Detective Gabbert concluded that Appellant had lost the normal use of his mental and/or physical faculties. After he was arrested, Appellant stated, "At least I'm not falling-down drunk. I'm just trying to make it home." He also said, "I haven't had that much beer to drink, just a half a dozen or so."

### III. JURY CHARGE ERROR: DEFINING "REASONABLE DOUBT"

In one point, Appellant challenges his DWI conviction, claiming that the trial court erred by including a partial definition of the phrase "reasonable doubt." More specifically, Appellant claims that *Paulson v. State* prohibits a definitional instruction on reasonable doubt and that by including one, the trial court committed egregious error. 28 S.W.3d 570, 573 (Tex. Crim.App.2000). The State responds that Appellant waived his right to complain on appeal because his counsel affirmatively stated on the record that he had no objections to the jury charge. Because we find no error in the jury charge, we affirm.

The function of the jury charge is to instruct the jury on the law applicable to the case. TEX.CODE CRIM. PROC. ANN. art. 36.14 (Vernon Supp.2002); *Dinkins v. State*, 894 S.W.2d 330, 339 (Tex.Crim.

---

1. Appellant exhibited clues of intoxication during the horizontal gaze nystagmus, the walk-and-turn, the one-legged stand, and the nose-touch field sobriety tests.

App.), *cert. denied,* 516 U.S. 832, 116 S.Ct. 106, 133 L.Ed.2d 59 (1995). Generally, to preserve error, a party must object. Tex. R.App. P. 33.1(a). The court of criminal appeals carved out an exception to this general rule for jury charge error in *Almanza v. State.* 686 S.W.2d 157 (Tex. Crim.App.1985) (op. on reh'g). The *Almanza* court held that if the defendant does not object to error in the jury charge, to complain about it on appeal he must show the error was fundamental. 686 S.W.2d at 171. Fundamental error in the jury charge is error that is so egregious and causes such harm as to deprive the accused of a fair and impartial trial. *Id.; Webber v. State,* 29 S.W.3d 226, 231 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). Therefore, when we review whether there has been error in a jury charge, we apply an *Almanza* analysis to determine: (1) whether error actually exists in the charge, and (2) whether any resulting harm requires reversal. *Mann v. State,* 964 S.W.2d 639, 641 (Tex.Crim.App.1998); *Almanza,* 686 S.W.2d at 171.

### A. Affirmative Waiver

At trial Appellant rested, and before closing arguments told the court that, except for a blank page, he had no objection to the charge. After explaining that the blank page was mistakenly included, the trial court posited the question, "Any objection from the Defense ...?" The defense responded, "I've had an opportunity to review the charge. I have no additional requests, nor do I have an objection to the charge as proposed." Based on this statement, the State contends that Appellant has waived any objection to the charge and, therefore, presents nothing for review.

■ Because both parties concede that Appellant affirmatively waived error, if any, the threshold question before us is whether affirmative waiver in the context of a possible jury charge error precludes application of the *Almanza* egregious harm test. The State relies on *Cedillo v. State* for the blanket proposition that when a defendant affirmatively states he has no objection to a jury charge, he waives any error to that charge and *Almanza* does not apply. 33 S.W.3d 366, 367–68 (Tex.App.— Fort Worth 2000, pet. ref'd). In *Bluitt v. State,* we reexamined affirmative waiver in the context of jury charge error. 70 S.W.3d 901, 905–06 (Tex.App.—Fort Worth, 2002, no pet.). We held in *Bluitt,* "[T]he *Almanza* egregious harm test is applicable to both unobjected to jury charge error and affirmatively waived jury charge error where the error complained of constitutes the 'law applicable to the case.' " *Id.* at 906. Further, we expressly disapproved of *Cedillo*'s application as a "universal, blanket rule applied to all affirmative waivers of jury charge error...." *Id.* Therefore, we find the State's attempt to apply *Cedillo* as a blanket rule to all affirmative waivers of jury charge error unpersuasive. *See id.; see also Webber,* 29 S.W.3d at 235 (holding affirmative waiver argument inconsistent with *Almanza*).

■ The Texas Code of Criminal Procedure, article 38.03, provides that the State is required to prove beyond a reasonable doubt the essential elements of a crime. Tex.Code Crim. Proc. Ann. art. 38.03 (Vernon Supp.2002); *Short v. State,* 874 S.W.2d 666, 667 (Tex.Crim.App.1994). Appellant's argument regarding whether reasonable doubt should be defined in a jury charge addresses the law applicable to the case; therefore, *Almanza*'s egregious harm analysis is applicable despite Appellant's affirmative waiver of error, if any. *See Bluitt,* 70 S.W.3d at 906; *Webber,* 29 S.W.3d at 235.

### B. Error in the Charge?

Having concluded that *Almanza* applies, we must now determine whether the trial court committed error by submitting a jury charge distinguishing reasonable doubt from possible doubt. The complained of portion of the jury charge reads as follows: "It is not required that the prosecution prove guilt beyond all possible doubt; it is required that the prosecution's proof excludes all 'reasonable doubt' concerning the defendant's guilt." Appellant contends that, because this instruction tells jurors what reasonable doubt is not, it is definitional and, therefore, constitutes reversible error under *Paulson.* 28 S.W.3d at 571. In effect, Appellant contends that, post-*Paulson,* it is reversible error to include this language in a jury instruction. We disagree.

In 1991, the court of criminal appeals held for the first time, in *Geesa v. State,* that trial courts must define reasonable doubt in their jury charges. 820 S.W.2d 154, 162 (Tex.Crim.App.1991). Before *Geesa,* trial courts were not required or encouraged to provide a reasonable doubt instruction. *Paulson,* 28 S.W.3d at 571 (citing *Marquez v. State,* 725 S.W.2d 217, 241 (Tex.Crim.App.), *cert. denied,* 484 U.S. 872, 108 S.Ct. 201, 98 L.Ed.2d 152 (1987); *Pierce v. State,* 159 Tex.Crim. 504, 265 S.W.2d 601, 602 (1954)). Five years later, in *Reyes v. State,* the court of criminal appeals held that failure to submit the

*Geesa* instruction to the jury constituted "automatic reversible error." 938 S.W.2d 718, 721 (Tex.Crim.App.1996).

In October of 2000, the court of criminal appeals, in *Paulson,* specifically overruled *Reyes* and the portion of *Geesa* requiring trial courts to instruct juries on the definition of reasonable doubt. 28 S.W.3d at 573. Criticizing *Geesa*'s three reasonable doubt definitions, the *Paulson* court noted, "The first definition is useless. . . . The second definition [is] . . . more troubling because the use of 'hesitation' is ambiguous. . . . [T]he third 'definition' is not really a definition at all . . . [i]t is a fallacious application of the second definition."[2] *Id.* at 572. *Paulson* concluded:

> We find that the better practice is to give no definition of reasonable doubt at all. . . . On the other hand, if both the State and the defense were to agree to give the *Geesa* instruction to the jury, it would not constitute reversible error for the trial court to acquiesce to their agreement.

*Id.* at 573. Appellant relies on *Paulson*'s conclusion for the proposition that it is reversible error to include any definition of reasonable doubt in a jury charge.

After careful consideration, we conclude that *Paulson* did not hold that merely giving a reasonable doubt definition in a jury charge constitutes reversible error.[3]

---

2. *Geesa* defines reasonable doubt as:

A "reasonable doubt" is a doubt based on reason and common sense after a careful and impartial consideration of all the evidence in the case. It is the kind of doubt that would make a reasonable person hesitate to act in the most important of his own affairs.

Proof beyond a reasonable doubt, therefore, must be proof of such a convincing character that you would be willing to rely and act upon it without hesitation in the most important of your own affairs.

3. Intermediate courts of appeals are divided regarding whether *Paulson* prohibits the inclusion of a reasonable doubt definition in a jury charge. *Compare Colbert v. State,* 56 S.W.3d 857, 860 (Tex.App.—Corpus Christi 2001, pet. granted) (holding "if the State and defendant do not agree to the *Geesa* instruction, it constitutes reversible error for the trial court to submit the definitional instruction"), *with Dooley v. State,* 65 S.W.3d 840, 844 (Tex.App.—Dallas 2002, pet. ref'd) (noting "merely giving a reasonable doubt instruction [does not constitute] reversible error"). Our position that defining reasonable doubt is not reversible error has support; in 1994, the

Importantly, the *Paulson* court did not expressly state that inclusion of a reasonable doubt definition constituted reversible error. While the court did conclude that "the *better practice* is to give no definition of reasonable doubt at all to the jury," the court also noted that if both parties agreed to submit a *Geesa* instruction to the jury, the instruction would not be reversible error. *Paulson*, 28 S.W.3d at 573 (emphasis added).

To the extent that *Paulson* may *disfavor* a trial court's defining reasonable doubt to a jury, its criticism of the *Geesa* instruction does not apply to this case. Notably absent from *Paulson*'s three-part breakdown of the *Geesa* instruction's definition of reasonable doubt is any criticism or discussion of the distinction between reasonable doubt and possible doubt. *Id.* at 572. The language in question, "It is not required that the prosecution prove guilt beyond all possible doubt; it is required that the prosecution's proof excludes all

'reasonable doubt' concerning the defendant's guilt," merely notes that reasonable doubt does not mean possible doubt. *See Victor*, 511 U.S. at 19, 114 S.Ct. at 1249 (finding no fault with part of jury charge distinguishing reasonable doubt from possible doubt). We hold that the trial court did not err by submitting a jury charge distinguishing reasonable doubt from possible doubt. Having found no error in the jury charge, we forgo a harm analysis and overrule Appellant's point.

## IV. CONCLUSION

Having overruled Appellant's sole point on appeal, we affirm the trial court's judgment.

Supreme Court noted, "the Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a

matter of course." *Victor v. Nebraska*, 511 U.S. 1, 5, 114 S.Ct. 1239, 1243, 127 L.Ed.2d 583 (1994).