STRINGER V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-02-283-CR

MARSHALL PERRY STRINGER APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM COUNTY CRIMINAL COURT NO. 5 OF DENTON COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellant Marshall Perry Stringer appeals from his conviction for driving while intoxicated.  Appellant pled not guilty.  A jury convicted him, and the trial court sentenced him to 120 days’ confinement and fined him $800, but suspended the jail sentence for eighteen months.  In four points on appeal, Appellant contends that the trial court erred by failing to suppress evidence obtained after he had invoked his right to counsel, improperly commenting on the weight of the evidence in the jury charge, and submitting an erroneous instruction to the jury.  We affirm.

Background

 State Trooper Craig Bickers initiated a traffic stop of Appellant’s car after he clocked the car traveling at seventy-three miles per hour in a sixty-mile-per-hour speed zone.  When Trooper Bickers made contact with Appellant, he immediately detected the odor of alcohol on Appellant’s breath and asked Appellant if he had been drinking.  Appellant initially responded that he had not.  After continued questioning, Appellant admitted to consuming some beers “two or three hours” earlier.
(footnote: 2)  Trooper Bickers then had Appellant perform several standard field sobriety tests, took him to the Denton County jail, and ultimately arrested him for driving while intoxicated.

Trooper Bickers videotaped Appellant at the jail and the tape was later introduced as State’s Exhibit number 2.  The videotape shows Trooper Bickers reading Appellant his statutory DIC 24 warning, which says that he would be asked to give a specimen of his “breath and/or blood,” and which was introduced at trial as State’s Exhibit number 1.  While Trooper Bickers was preparing the breathalyzer machine, the following exchange occurred:

A: So, if I were to refuse the breathalyzer test, I’m basically --

T: Refusing.

A: -- effectively pleading guilty?  Or --

T: No, sir, you’re just refusing to take a breath sample, that’s all that is.

A: I mean, what are the ramifications of that?

T: That, I can’t answer for you.  That’s a legal question.  I can’t give you any kind of legal guidance.

A: 
Can I see a lawyer?

T: 
Not right now, no sir.

A: I have no option to see a lawyer 
at this point?

T: No, sir, [you] do not.  [Emphasis added.]

Appellant took the breath test.  The two specimens measured .085 and .078, one of which was above the legal limit.  Trooper Bickers placed Appellant under arrest and read Appellant his 
Miranda 
warnings.  When asked if he understood the warnings, Appellant answered “Yes.”  Trooper Bickers then asked Appellant several questions, including when and what he had last eaten and how long he had slept the night before.

Appellant did not make a pre-trial motion to suppress the responses he made to Trooper Bickers’ interrogation after he received his
 Miranda
 warnings.  However, before trial, Appellant requested that the trial court exclude them from evidence.  During the testimony of the State’s first witness, Trooper Bickers, the trial court excused the jury, watched the challenged portion of the videotape, and heard Appellant’s testimony for the limited purpose of whether he had waived his right to an attorney before the interrogation.  The trial court ruled that Appellant’s responses were admissible.

Point 1

Appellant first contends that the trial court erred when it admitted his responses to custodial interrogation because Appellant had invoked his right to counsel.
(footnote: 3)  The State argues that Appellant did not invoke his right to counsel, and, in addition, Appellant’s Fifth Amendment right to counsel was not implicated because Appellant was not subjected to custodial interrogation at the time he mentioned counsel and Appellant later waived this right.  We agree with the State.

A defendant’s Fifth Amendment right to counsel, which protects a defendant from governmental compulsion to be a witness against himself, is invoked when he is subjected to custodial interrogation.  
Griffith v. State
,
 55 S.W.3d 598, 602 (Tex. Crim. App. 2001).  
A defendant’s Sixth Amendment right to counsel, which provides a defendant a right to assistance of counsel in a criminal prosecution, is invoked when formal charges have been filed against him.  
Id.  
Under the self-incrimination clauses of the United States and Texas Constitutions, a defendant does not have the right to consult counsel before deciding whether to take a breath test because a breath test is not testimonial and therefore does not submit the defendant to custodial interrogation.  
Halbrook v. State,
 31 S.W.3d 301, 304 (Tex. App.—Fort Worth 2000, pet. ref’d) (citing 
Jamail v. State,
 787 S.W.2d 380, 382 (Tex. Crim. App.), 
cert. denied,
 498 U.S. 853 (1990)).

We review a trial court's ruling on a motion to suppress using a bifurcated standard of review.  
Carmouche v. State, 
10 S.W.3d 323, 327 (Tex. Crim. App. 2000).  First, we give almost total deference to a trial judge's determination of historical facts and application of the law to fact questions that turn on credibility and demeanor of the witnesses.
  Id.
; 
Martinez v. State,
 29 S.W.3d 609, 611 (Tex. App.—Houston [1
st
 Dist.] 2000, pet. ref'd).  Second, we review de novo application of the law to fact questions that do not turn upon credibility and demeanor.  
Carmouche,
 10 S.W.3d at 328.  When the trial court does not make findings of fact, we review the evidence in the light most favorable to the trial court's ruling.  
Id.

In 
Halbrook v. State
, we addressed a case in which an exchange similar to that in this case occurred in a breathalyzer room between the DWI suspect and arresting officers:

APPELLANT: Do I get an opportunity to have my attorney present?

OFFICER #1: Not at this time you don’t.

APPELLANT: Why not?

OFFICER #1: Because that has nothing to do with your attorney at this moment.

APPELLANT: You’re going to interrogate me without an attorney present?

OFFICER #2: All he’s asking is whether or not you will submit to a breath test.  Will you submit to a breath test at this time?

APPELLANT: Are you asking me to give evidence against myself without an attorney present?

. . . .

OFFICER #2: He’s asking you to provide a breath specimen without anyone but the people in this room present.

APPELLANT: That’s true.  Without an attorney present, without legal counsel -- to give up my right to counsel to do this, right?

OFFICER #2: Are you willing to give a breath test?

APPELLANT: Sure.  Absolutely.

Halbrook, 
31 S.W.3d at 302-03.  In 
Halbrook
, we held that the appellant’s question as to whether he could have the opportunity to have his attorney present did not constitute a clear and unambiguous invocation of his right to counsel. 
 Id.
 at 304.  Here, a similar exchange occurred between Appellant and Trooper Bickers:

A: Can I see a lawyer?

T: Not right now, no sir.

A: I have no option to see a lawyer at this point?

T: No, sir, [you] do not.

 

The case before us is indistinguishable from 
Halbrook, 
and we likewise hold that Appellant’s question as to whether he could see a lawyer did not constitute a clear and unambiguous invocation of his right to counsel.  In addition, Appellant did not have the right to consult counsel before taking the breath test because, as mentioned above, a breath test is not testimonial and is not custodial interrogation, and formal charges had not yet been filed.  
See id.
  

Appellant attempts to distinguish 
Halbrook
.  He argues that in 
Halbrook
 the officer clarified his answer to the defendant’s inquiry about his right to counsel before taking a breath test by the statement that a breath test “has nothing to do with your attorney at this moment,” while Trooper Bickers just gave Appellant an unequivocal “no.”  Appellant argues that the 
Halbrook
 officer’s response let the appellant know that he could not have an attorney for the limited purpose of deciding whether to take the breath test.  We do not see any substantive difference between the exchange in 
Halbrook
 and the one in this case.  Looking at the context of the exchange, Trooper Bickers correctly informed Appellant that he did not have a right to an attorney in deciding whether to offer a breath sample.  Appellant understood the trooper’s statement because his follow-up question asked for clarification as to whether he had the right to counsel “at this point.”  

Appellant also argues that, unlike himself, the defendant in
 Halbrook 
did not make any incriminating statements.  We do not know whether 
the defendant in 
Halbrook
 made incriminating responses to interrogation.  That issue is not discussed in 
Halbrook
 because the issue on appeal was whether the jury should have been allowed to hear the defendant allegedly invoke his right to counsel.  
Id.
 at 303. 

Appellant further argues that he did not waive his right to counsel.  He argues that he was asked whether he understood his rights, but was not asked whether he waived them.  Appellant contends that he was confused by Trooper Bickers’ earlier statement that Appellant could not have a lawyer. 

A defendant may waive his rights to counsel without an express waiver statement. 
Rocha v. State,
 16 S.W.3d 1, 12 (Tex. Crim. App. 2000).  A trial court does not have to believe a defendant’s claims that he misunderstood the 
Miranda 
warnings.  
Id.
 (holding appellant claiming that he did not understand his rights had indeed waived his rights when audiotape showed officers read appellant the warnings and appellant said he understood them).

At trial, the trial court heard testimony for the limited purpose of determining whether Appellant had waived his rights.  He testified as follows:

Q: When he read your Miranda rights, what did you think after that point?

A: Well, at that point -- I still-- he just told me I could not have a lawyer after the Miranda rights and I still felt the same way.
(footnote: 4)  

Q: Okay.  Did you ever knowingly and intelligently or voluntarily waive your right to a lawyer?

A: No, sir.

Q: Okay.  Did you rely on the police officer’s affirmative statement to you that you did not have the right to a lawyer when you went ahead and answered his questions?

A: That’s correct.

Q: If you would have known you had the right to a lawyer, would you have answered his questions?

A: No, I wouldn’t have.

Appellant contends that his previous alleged invocation of an attorney continued after he was read the 
Miranda
 warnings because Trooper Bickers did not expressly ask Appellant if he wanted to waive his rights to an attorney.  On cross-examination, Appellant stated that he misunderstood the 
Miranda
 warnings and thought the warnings were “more of a formality that he was going through and not really giving me that option.  I mean, because he had just told me that I could not have a lawyer.”

Appellant’s arguments are not convincing.  Before the breath test, Appellant had clarified with Trooper Bickers that he did not have a right to an attorney “at this point.”  Trooper Bickers read Appellant his 
Miranda
 warnings after arresting him, specifically told him he had a right to counsel, and asked Appellant if he understood these rights.  Appellant answered “Yes.”  Appellant then proceeded to answer the trooper’s questions without requesting counsel.  The trial court could disbelieve Appellant’s claim that he misunderstood the nature of the 
Miranda
 warnings.  
See Rocha,
 16 S.W.3d at 12.  In addition, the trial court could find that Appellant waived his rights to remain silent and to have an attorney present during his interrogation
 even though the record does not contain an express waiver statement.  
See id.  
Accordingly, we hold that the trial court did not err in admitting Appellant’s responses to interrogation, and we overrule his first point. 

Comment on the Weight of the Evidence

In his second and third points, Appellant argues that the trial court improperly commented on the weight of the evidence in the jury charge when it instructed the jury in accordance with subsection 724.019 of the Texas Transportation Code.  
See 
Tex. Transp. Code Ann. 
§ 724.019 (Vernon 1999).
  The trial court instructed the jury as follows:

(a)  A person who submits to the taking of a specimen of breath, blood, urine, or another bodily substance at the request or order of a peace officer may, on request and within a reasonable time not to exceed two hours after the arrest, have a physician, qualified technician, chemist, or registered professional nurse selected by the person take for analysis an additional specimen of the person’s blood.

[(b)]  The person shall be allowed a reasonable opportunity to contact a person specified by Subsection (a).

[(c)]  A peace officer or law enforcement agency is not required to transport for testing a person who requests that a blood specimen be taken under this section.

[(d)]  The failure or inability to obtain an additional specimen or analysis under this section does not preclude the admission of evidence relating to the analysis of the specimen taken at the request or order of the peace officer. 

 [(e)]  A peace officer, another person acting for or on behalf of the state, or a law enforcement agency is not liable for damages arising from a person’s request to have a blood specimen taken.

See id.  
The State concedes that subsection (e) should not have been included in the charge, because no evidence was introduced making that subsection applicable to the case before us; however, its inclusion was harmless.  The State contends that subsection (d), on the other hand, was applicable to the instant case and therefore was not erroneously included in the trial court’s charge.  We agree with the State.

Appellate review of error in a jury charge involves a two-step process.  
Abdnor v. State
, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994).  Initially, we must determine whether error occurred.  If so, we must then evaluate whether sufficient harm resulted from the error to require reversal. 
 Id.
 at 731-32.  Error in the charge, if timely objected to in the trial court, requires reversal if the error was “calculated to injure [the] rights of the defendant,” which means no more than that there must be 
some
 harm to the accused from the error.  
Tex. Code Crim. Proc. Ann
. art. 36.19 (Vernon 1981); 
see also Abdnor
, 871 S.W.2d at 731-32; 
Almanza v. State
, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh’g).  In other words, a properly preserved error will call for reversal as long as the error is not harmless.  
Almanza
, 686 S.W.2d at 171.  In making this determination, “the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole.”  
Id.
; 
see also Ovalle v. State
, 13 S.W.3d 774, 786 (Tex. Crim. App. 2000).

Article 36.14 of the code of criminal procedure provides that “the judge shall . . . deliver to the jury . . . a written charge distinctly setting forth the law applicable to the case; not expressing any opinion as to the weight of the evidence.” 
Tex. Code Crim. Proc. Ann. 
art. 36.14 (Vernon Supp. 2003).  Appellant argues that the trial court’s inclusion of subsections (d) and (e) was improper because they “effectively told the jury that Trooper Bickers did not do anything wrong when he failed to inform appellant about his right to a blood test.”

We first examine subsection (e), which the State concedes the trial court erroneously included in the charge, and proceed directly to a harm analysis.  In our review of the entire record, the jury charge, and the argument of counsel, we determine that no harm occurred.  The charge, as a whole, is unremarkable, with no other erroneous or questionable sections.  The statement did not present reversible error because it correctly related the law, it was given to the jury only in the abstract, and it was not applied to the specific facts of the case.  “When an abstract charge is erroneously given on a theory of law, without specific application to the facts of the case, the overruling of an objection to the abstract charge is not error.”  
Hughes v. State,
 897 S.W.2d 285, 297 (Tex. Crim. App. 1994), 
cert. denied
, 514 U.S. 1112 (1995).

Subsection (e) neither gave the court’s opinion nor expressed a prejudice in favor of the State.  Subsection (e) did not relate to any issue in the case, and Appellant argued as much during closing argument.  The worst that can be said of subsection (e) is that it was not needed in the charge, and it could be ignored by the jury.  
See Zuliani v. State,
 52 S.W.3d 825, 832 (Tex. App.—Austin 2001), 
rev’d on other grounds,
 97 S.W.3d 589 (Tex. Crim. App. 2003).

As to subsection (d), we hold that it was not erroneously included in the charge.  Section 724.019 allows an individual to take a blood test 
in addition to
 the test required by the arresting police officer.
  Tex. Transp. Code Ann.
 § 724.019(a).  Although Trooper Bickers did not inform Appellant that he was entitled to request an additional blood test under 724.019, he also did not misinform Appellant.  Appellant makes no argument that police are required to inform DWI suspects of the provisions of section 724.019.  The evidence is undisputed that Appellant did not request an opportunity to have a qualified person come to the jail within two hours of his arrest and draw a sample of his blood after he provided a breath sample to Trooper Bickers.  Instead, the videotape shows that Appellant was requesting to take a blood test 
instead of
 a breath test, not
 in addition
 to the breath test.  Therefore, Trooper Bickers did not deny a request by Appellant under 724.019.

Based on Appellant’s cross-examination of the only two witnesses in the trial, the trial court could have determined that Appellant intended to leave the jury with an impression that Appellant had desired to take a blood test 
in addition
 to the breath test, and that Trooper Bickers had either misinformed him of this right or denied him the right.  Appellant cross-examined Trooper Bickers as follows:

Q: [APPELLANT’S COUNSELl] Okay. Now, [Appellant] specifically asked you, Don’t I have the right to a blood test, [sic] on that videotape, didn’t he?

A: [TROOPER] Yes, sir.

Q: And your response was no, correct?

A: Yes, sir.

Q: Do you think [Appellant]’s entitled to rely on what you tell him the law is if he asks you?

A: No, sir.

Q: Well, he didn’t know and he asked you, Don’t I have the right to a blood test?

A: The specific question he asked me was at that point he did not want to submit to my breath specimen.  He wanted me to offer him a blood specimen.

Q: Okay.  And didn’t he ask you the question, Don’t I have a right to a blood test?  And the true answer to that question is, sir, if you take this breath test, you have the right to have an additional specimen of your blood taken, and you shall be allowed a reasonable opportunity to contact a person that can draw the blood.  That would have been the most correct and accurate answer you could have given him; is that right?

A: No, sir.

During cross-examination of the technical supervisor, counsel again asked the question about Appellant’s “statutory right” to get a blood test.  Appellant’s cross-examination posed a danger of misleading the jury on whether the trooper had misinformed Appellant about his “right” to take a blood test, and the focus of his closing argument was that Appellant had the “right” to take a blood test and that he could now take his case to the jury and “ask the people is what happened to me right under the law.”  Appellant’s various representations concerning a “right” to a blood test could have caused the jury to question the weight it should give the breath test or the fairness of admitting a breath test when Appellant had been misinformed about or denied his “right” to an additional blood test.  Once Appellant’s alleged right to take a blood test was interjected into the case, the instruction was a “necessary clarification” of the law and was not a comment on the weight of the evidence.  
See Cockrell v. State,
 933 S.W.2d 73, 90 (Tex. Crim. App. 1996), 
cert. denied
, 520 U.S. 1173 (1997).  Accordingly, we hold that subsection (d) of section 724.019 was properly included in the charge and overrule Appellant’s second and third points.

Reasonable Doubt Instruction

In his fourth point, Appellant contends that a sentence in the jury charge improperly defined “reasonable doubt” and urges us to overrule our prior holdings to the contrary.  The jury charge instructed the jury as follows:

It is not required that the prosecution proves guilt beyond all possible doubt; it is required that the prosecution’s proof excludes all reasonable doubt concerning the defendant’s guilt.

Appellant argues that this instruction effectively lowered the State’s burden of proof.  We have previously rejected similar arguments based on identical jury instructions.  
See Minor v. State, 
91 S.W.3d 824, 828-29 (Tex. App.—Fort Worth 2002, pet. filed); 
Vosberg v. State,
 80 S.W.3d 320, 324 (Tex. App.—Fort Worth 2002, pet. filed).  Appellant has not provided this court with any persuasive reason why it should overrule these precedents, and we decline to do so.  We overrule Appellant’s fourth point.

Conclusion

Having overruled all of Appellant’s points, we affirm the trial court’s judgment.

PER CURIAM

PANEL A: HOLMAN, J.; CAYCE, C.J.; and GARDNER, J.

GARDNER, J. concurs without opinion.

DO NOT PUBLISH

Tex. R. App. P. 
47.2(b)

DELIVERED: June 5, 2003

FOOTNOTES
1:
See 
Tex. R. App. P. 
47.4.

2:
The videotape from the scene of the stop showed that Appellant said he had a couple of beers “two or three hours” previous.  The videotape from the breathalyzer room showed that Appellant said he had two beers “way earlier in the day.”

3:
Appellant does not specify whether his attack is based on the Fifth or Sixth Amendments to the United States Constitution; however, his specific claim is that his answers during interrogation should not have been admitted, not that the trial court erred in letting the jury hear him allegedly invoke his right to an attorney.

4:
The videotape reflects that Appellant was told he could not have an attorney 
before Miranda
 was read.