

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-15-00118-CR

JACOB JORDANN BRIGHT, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the Criminal District Court 1
Tarrant County, Texas[1]
Trial Court No. 1306330D, Honorable Elizabeth Beach, Presiding

June 29, 2016

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Appellant, Jacob Jordann Bright, was convicted of capital murder[2] and sentenced to life imprisonment without parole[3] in the Institutional Division of the Texas Department of Criminal Justice (ID-TDCJ). Appellant has perfected his appeal and contends that (1) the evidence is insufficient to support the jury's verdict, (2) the trial court committed

---

[1] Pursuant to the Texas Supreme Court's docket equalization effort, this case was transferred to this Court from the Second Court of Appeals. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013).

[2] *See* TEX. PENAL CODE ANN. § 19.03(a)(2) (West Supp. 2015).

[3] *See id.* § 12.31(a)(2) (West Supp. 2015).

reversible error in the charge, and (3) the trial court abused its discretion by admitting certain text messages into evidence. We will affirm.

## Factual and Procedural Background

On November 19, 2012, appellant drove the car belonging to Beatric Olvera, his girlfriend, to the Southgate Manor Apartments in Fort Worth, Texas. When appellant arrived at the apartment, he was dressed in jeans and a black jacket. After arriving at the apartment complex, appellant encountered Brian Mason and his son. The son was playing with a black Halloween mask that covered his face except for the eyes. Appellant asked if he could have the mask. Mason refused and left. According to Mason, he threw the mask into the street as he left the apartment complex.

Appellant then went to Mechelle Patterson's apartment and talked with Floyd McCoy about needing to get some money. According to Patterson, appellant was in possession of a small revolver while in the apartment. After discussing ways to get money, appellant made the decision to attempt to rob someone to gain money. He and McCoy left the apartment and appeared to be waiting in the breezeway of the apartment adjacent to the parking area. McCoy then returned to the apartment without appellant.

On this evening, shortly after appellant left Patterson's apartment, the decedent, Islander Tavira, returned to the apartment with Maria Rodriguez and two of her children. As they exited their vehicle and began to approach the breezeway, an African-American man dressed in black clothes and wearing a mask covering his face approached Tavira from the breezeway. The man demanded money from Tavira. After being told by Tavira that he did not have any money, the man demanded money a second time.

2

At this time, Rodriguez's young son darted past the man and headed through the breezeway toward Rodriguez's apartment. The man who accosted Tavira turned and began to chase the child. Tavira and Rodriguez also ran after the child. As Tavira was going through the breezeway, the man turned and fired multiple shots at Tavira. Tavira was struck by at least four shots and one proved to be fatal. Tavira fell to the ground, and it was eventually determined by emergency personnel that he died as a result of the gunshot wounds.

The assailant was not captured on the night of the shooting. However, at trial, Patterson testified that she watched the shooting from her apartment. Patterson testified that, immediately after the shooting, appellant ran past her apartment and exited the complex, headed toward a school located on the backside of the complex. She identified appellant as the shooter.

Mason, who had seen appellant earlier in the evening, testified that he saw appellant running near his house which is located, according to Mason's testimony, about a 15 to 20 minute walk from the apartment complex. According to Mason, appellant seemed to be excited or startled and asked Mason for help. Mason declined to help appellant and told him to leave his home.

After leaving Mason's home, appellant was picked up by Rashad Holloway, a close friend, who took him back to Olvera's apartment. According to Holloway, appellant was "amped up" when Holloway picked him up. Holloway and appellant waited at Olvera's apartment until she arrived home. After Olvera returned home,

Holloway drove her to a location near the Southgate Manor Apartments where she picked up her car.

Olvera testified that, on the night in question, during a telephone conversation, appellant told her he had done "something stupid." Further, at her apartment later, appellant recounted that he accosted a man and told him to give him whatever he had and he took off running and the guy got to him. Appellant further stated that he "tussled" with the man and pulled the trigger. Through the testimony of the medical examiner, the State showed that Tavira was struck by four gunshots. One of the gunshots struck Tavira at the base of his neck and caused a lethal injury to his aorta.

The State introduced latent fingerprints from Olvera's car that were a match for appellant, thus, supporting the fact that appellant had driven the car to the location near the Southgate Manor Apartments. Through the testimony of Special Agent Mark W. Sedwick of the FBI, the State was able to show that appellant had used his cell phone a number of occasions on the evening in question in and around the apartment complex where the shooting occurred.

During the State's presentation of evidence a series of texts were introduced into evidence. These texts were between appellant and his brother, Shawn. In these texts, Shawn makes the following statements to appellant:

Shawn instructs appellant to get a different phone and appellant responds, "Bet."
Shawn advises appellant he can "get away with this."

Shawn advises appellant that he intends to make sure that "nobody talkin."

Shawn asks if anyone saw appellant, to which appellant answers, "No."

4

Appellant testified in his on behalf. He denied being present when Tavira was shot. He did admit that he had been in Patterson's apartment earlier. However, appellant testified that the gun Patterson saw him with was sold to McCoy on that evening. Appellant further testified that he and McCoy got into an argument about whether the gun was operational and ended up in a fight. According to appellant, it was after this fight with McCoy that he was seen running to Mason's home.

After receiving the evidence and the charge of the court, the jury found appellant guilty of capital murder. Because the State did not seek the death penalty, appellant was sentenced to a mandatory sentence of life in the ID-TDCJ without parole. This appeal followed.

Appellant appeals bringing forth three issues. He contends that (1) the evidence is insufficient to support the jury's verdict, (2) the trial court committed reversible error in its charge to the jury, and (3) the trial court abused its discretion by admitting certain text messages in evidence. Disagreeing with appellant, we will affirm.

Sufficiency of the Evidence

By his first issue, appellant contends that the evidence was not sufficient to support the jury's finding of guilt.

Standard of Review

In assessing the sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*

*v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). "[O]nly that evidence which is sufficient in character, weight, and amount to justify a factfinder in concluding that every element of the offense has been proven beyond a reasonable doubt is adequate to support a conviction." *Brooks*, 323 S.W.3d at 917 (Cochran, J., concurring). We remain mindful that "[t]here is no higher burden of proof in any trial, criminal or civil, and there is no higher standard of appellate review than the standard mandated by *Jackson*." *Id.* When reviewing all of the evidence under the *Jackson* standard of review, the ultimate question is whether the [trier of fact]'s finding of guilt was a rational finding. *See id.* at 906–07 n.26 (discussing Judge Cochran's dissenting opinion in *Watson v. State*, 204 S.W.3d 404, 448–50 (Tex. Crim. App. 2006), as outlining the proper application of a single evidentiary standard of review). "[T]he reviewing court is required to defer to the [trier of fact]'s credibility and weight determinations because the [trier of fact] is the sole judge of the witnesses' credibility and the weight to be given their testimony." *Id.* at 899. Further, we note that direct and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of the incriminating circumstances is sufficient to support the conviction. *See Ramsey v. State,* 473 S.W.3d 805, 808 (Tex. Crim. App. 2015).

Appellant argues that the evidence was insufficient for two reasons. First, appellant contends that the evidence was insufficient to show that he caused the death of Tavira in the course of committing or attempting to commit the offense of robbery. Second, appellant contends that the evidence was insufficient to show he specifically intended to cause the death of Tavira.

6

<u>Applicable Law</u>

In analyzing the sufficiency of the evidence, we must first review the statutory requirements for the offense. A person commits capital murder if he intentionally commits murder in the course of committing or attempting to commit kidnapping, burglary, robbery, aggravated sexual assault, arson, obstruction, or retaliation. TEX. PENAL CODE ANN. § 19.03(a)(2).[4] A person commits robbery if, in the course of committing theft and with intent to obtain or maintain control of the property, he intentionally, knowingly, or recklessly causes bodily injury to another or he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. § 29.02(a) (West 2011). Additionally, a person commits an offense if, with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended. § 15.01(a) (West 2011).

The State must prove a nexus or connection between the murder and the theft or attempted theft. *See Herrin v. State,* 125 S.W.3d 436, 440 n.6 (Tex. Crim. App. 2002) (citing *Moody v. State,* 827 S.W.2d 875, 892 (Tex. Crim. App. 1992) (en banc)). The robbery statute defines the phrase "in the course of committing theft" as "conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft." § 29.01(1) (West 2011). The phrase "in the course of committing," when used in the capital murder context, is given the same meaning as the phrase when used and defined in the robbery statute. *See Ibanez v. State,* 749 S.W.2d 804, 807 (Tex. Crim. App. 1986) (en banc). This means that conduct that occurs during

---

[4] Further reference to the Texas Penal Code will be by reference to "section ____" or "§ ____."

an attempt to commit, during the commission, or in the immediate flight after the attempt or commission of the offense may support a conviction for capital murder. *See Garrett v. State,* 851 S.W.2d 853, 856 (Tex. Crim. App. 1993) (en banc). A capital murder is not temporally limited to the time during which the appellant committed or attempted to commit the robbery. *See White v. State,* No. 08-10-0020-CR, 2011 Tex. App. LEXIS 6556, at *13 (Tex. App.—El Paso Aug. 17, 2011, no pet.) (not designated for publication) (citing *Garrett,* 851 S.W.2d at 856).

Analysis

We begin our analysis of appellant's first contention regarding the sufficiency of the evidence by a review of the record upon which the jury based its decision. Patterson's testimony established that appellant was looking for a way to get some money. Further, Patterson testified that appellant was armed with a small handgun. Appellant and McCoy agreed that appellant would rob someone in an effort to obtain money. Appellant and McCoy went to the breezeway and waited for someone to approach.

McCoy returned to the apartment but appellant stayed in the breezeway. On the night in question, appellant was dressed in jeans and a black jacket. Rodriguez testified that a short, black man dressed in black approached Tavira and demanded all of Tavira's money. When Tavira responded that he had no money, the man demanded it a second time.

After the second demand for money, the male child with Rodriguez ran through the breezeway toward his apartment and appellant turned to follow. Tavira immediately

8

began running toward the breezeway. At this time, appellant turned and fired his handgun at Tavira. Four rounds struck Tavira, one fatally.

Patterson watched the shooting from her doorway and testified that appellant shot Tavira. She further testified that appellant immediately ran toward the back of the apartment complex in the direction of the school.

From these facts, we find that the State proved that appellant attempted to commit the offense of aggravated robbery. The attempt amounted to more than mere preparation and, in fact, amounted to a completed aggravated robbery except that Tavira never gave any money to appellant. *See* §§ 15.01(a), 19.03(a)(2). Because we give the phrase "in the course of committing" in a capital murder case the same meaning it would have in the robbery statute, the shooting of Tavira was committed in the course of committing the underlying attempted aggravated robbery. *See Garrett,* 851 S.W.2d at 856. As to the temporal element between the attempted aggravated robbery and the shooting of Tavira, the record reflects it was almost a continuous action. Very simply put, the record supports the State's theory that appellant, upon not receiving any benefit from the attempted robbery, was fleeing and turned and shot Tavira during his flight from the scene. *See White,* 2011 Tex. App. LEXIS 6556, at *13. Accordingly, a jury could rationally find that appellant committed this murder during the course of attempting to commit aggravated robbery. Appellant's contention to the contrary is overruled.

Next, appellant contends that the proof is insufficient as to whether appellant had the specific intent to kill Tavira. Such is the case, according to appellant's theory,

9

because Tavira sustained no injuries to the head or vital organs, such as the heart. Appellant continues to posit that the decision to fire at Tavira was a quick decision made while retreating. He likens the decision to an act which was clearly dangerous to Tavira but not specifically calculated to end Tavira's life. Before completing our analysis, we must review certain aspects of the law that control this matter.

Applicable Law

We have previously recited the definition of capital murder and refer the parties to that section of this opinion. Capital murder is a result-of-conduct offense. *See Mays v. State,* 318 S.W.3d 368, 387 (Tex. Crim. App. 2010). Therefore, the culpable mental state refers to the result of the conduct of appellant—a person's death—and not to the nature of that conduct. *See id.* Direct evidence of intent is not required. *See Hart v. State,* 89 S.W.3d 61, 64 (Tex. Crim. App. 2002). A jury may infer the intent to kill from any evidence that it believes proves the existence of that intent, including the accused's use of a deadly weapon. *See Brown v. State,* 122 S.W.3d 794, 800 (Tex. Crim. App. 2003). A firearm is a deadly weapon. § 1.07(17)(A) (West Supp. 2015). A jury may also infer intent from circumstantial evidence such as acts, words, and the conduct of the defendant. *See Laster v. State,* 275 S.W.3d 512, 524 (Tex. Crim. App. 2009).

Analysis

The record supports the jury's determination of appellant's guilt and, therefore, the determination that appellant acted with the specific intent to kill Tavira because appellant used a deadly weapon. *See* § 1.07(17)(A). As a result of appellant's use of a deadly weapon, Tavira died. *See Mays,* 318 S.W.3d at 387. The jury, having heard the

evidence of the use of a deadly weapon and Patterson's testimony regarding appellant's intent to commit an aggravated robbery, was rational in inferring the specific intent to kill Tavira. *See Laster,* 275 S.W.3d at 524. Appellant's contention to the contrary is overruled.

Thus, we conclude that the jury's finding of guilt was a rational finding. *Brooks,* 323 S.W.3d at 912. Having reviewed both of appellant's contentions regarding the sufficiency of the evidence and determined that the evidence was sufficient, we overrule appellant's first issue.

Charge Error

Appellant's next issue concerns perceived error in the trial court's charge to the jury at the end of the guilt/innocence phase of the trial. Appellant makes three specific complaints regarding the court's charge. Initially, appellant makes two complaints about the charge as given. First, appellant contends that the trial court erroneously instructed the jury as to the definitions of "capital murder" and "murder." Second, appellant contends that the trial court erroneously failed to include felony murder within the applicable definition of murder. Finally, appellant contends that the trial court erred when it instructed the jury that the State need not "prove guilt beyond all possible doubt."[5]

---

[5] Appellant denoted this as "Foreclosed issue" but included it with his brief. As we are not sure what appellant meant by denoting the issue as foreclosed, we will address it in this opinion.

Standard of Review

Appellate review of alleged jury trial error is a two-step process. *See Cortez v. State,* 469 S.W.3d 593, 598 (Tex. Crim. App. 2015). If the reviewing court determines there was jury charge error, then we must conduct a harm analysis. *See id.* The nature of the harm analysis depends upon whether the purported jury charge error was preserved for review by a proper objection. *See id.* If there was a timely objection to the jury charge, then reversal is required if there was some harm to the appellant. *See Marshall v. State,* 479 S.W.3d 840, 843 (Tex. Crim. App. 2016). If there was no objection to the jury charge, then reversal is required only if there was egregious harm. *See id.* Jury charge error is egregious if it affects the very basis of the case, deprives the appellant of a valuable right, or vitally affects a defensive theory. *See id.* When reviewing a record for egregious harm we consider (1) the entirety of the jury charge, (2) the state of the evidence, (3) counsel's arguments, and (4) any other relevant information revealed by the entire trial record. *See id.*

Analysis

Appellant's first complaint about the court's charge centers on the interplay between the abstract definitions of capital murder and murder as given in the charge. Appellant correctly points out that a charge of capital murder requires the specific intent to kill. *See Threadgill v. State,* 146 S.W.3d 654, 665 (Tex. Crim. App. 2004). According to appellant, the error in the court's charge was that the definitions of capital murder and murder were overly broad. The overbreadth came in the form of defining capital murder as intentionally committing murder.

In the court's charge, the court first defined murder as follows:

A person commits the offense of murder if he intentionally causes the death of an individual, or intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual.

Thereafter, in the following paragraph, the trial court defines capital murder as follows:

A person commits the offense of capital murder if the person intentionally commits the offense of murder in the course of committing or attempting to commit robbery.

The error, according to appellant, is that the use of these abstract definitions permits a jury to convict appellant of capital murder with an inappropriate type of murder, that is, with intent to cause serious bodily injury while committing an act clearly dangerous to human life.

The State responds by pointing out that the definitions track the statutory language of the applicable penal offenses in the Texas Penal Code. *See* §§ 19.02(b), 19.03(a)(2). This means, according to the State's theory, that there can be no error when the statutory language is followed in the abstract portion of the charge. *See Martinez v. State,* 924 S.W.2d 693, 699 (Tex. Crim. App. 1996).

The record reveals that appellant did not object to the definitions of murder and capital murder at the trial level. Therefore, we will first ascertain whether there was error in the court's charge and, if we find error, whether the error caused egregious harm. *See Cortez,* 469 S.W.3d at 598 (for the question of whether there was error); *Marshall,* 479 S.W.3d at 843 (for the question of whether any error caused egregious harm).

As a beginning point in our analysis, we recognize that the trial court is required to provide the jury with a written charge that sets forth the law applicable to the case. *See* TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007); *Reeves v. State,* 420 S.W.3d 812, 818 (Tex. Crim. App. 2013). In connection with this requirement is the requirement that the charge must be tailored to reflect the culpable mental state and conduct element. *See Price v. State,* 457 S.W.3d 437, 441 (Tex. Crim. App. 2015).

Again, capital murder is a result-of-conduct offense. *See Mays,* 318 S.W.3d at 387. It requires the specific intent to kill. *See Threadgill,* 146 S.W.3d at 665. Therefore, the charge at issue must be couched in terms of the result of appellant's conduct while further containing the specific intent to kill. Of the four possible culpable mental states provided for in the Texas Penal Code, the abstract definition of murder is couched in terms of "intentionally." Thus, the court's charge provides the proper culpable mental state. The abstract portion goes further by saying that, for a murder to become a capital murder, the appellant intentionally committed murder while in the course of committing or attempting to commit robbery. When taken together, these two abstract definitions provide the proper tailoring framework to use as part of the application paragraph of the court's charge, that is to say, an intentional killing while in the course of committing or attempting to commit robbery. *See Price,* 457 S.W.3d at 441.

Appellant's strained analysis is directed at the second portion of the definition of murder, and he is correct that the second portion of the abstract definition—the intent to cause serious bodily injury portion—would not support a capital murder conviction. This is so because capital murder requires the specific intent to kill. *See Threadgill,* 146

14

S.W.3d at 665. However, when the two abstract definitions are read together, it is clear that the court's charge never authorizes such a conviction. This is so because the capital murder definition limits the application of the murder definition by the use of the phrase "intentionally commits the offense of murder." It does not say "intending to cause serious bodily injury, commit an act clearly dangerous to human life." Therefore, when the abstract definitions are read together and placed in context, there is no error in the abstract definitions. *See Turner v. State,* 805 S.W.2d 423, 430 (Tex. Crim. App. 1991) (en banc) (holding that definitions must be examined in context in which they appear, and cannot be limited to portions of charge standing alone). As a result of our analysis, we find that the trial court properly charged the jury and there was no error. *See Cortez,* 469 S.W.3d at 598.

Appellant's argument fails to mention that the trial court gave a lesser-included charge of murder under the second portion of the murder definition, dealing with intent to cause serious bodily injury. Thus, the trial court's inclusion of the second portion of the murder definition was required.

Even if we assume, *arguendo,* that there is error in the court's charge, the application paragraph of the charge required the jury to find that appellant intentionally caused the death of Tavira. It reads as follows:

> Now, if you find from the evidence beyond a reasonable doubt that [,] on or about the 19th day of November, 2012, in Tarrant County, Texas, Jacob Jordann Bright, did then and there intentionally cause the death of an individual, Islander Tavira, by shooting him with a firearm, and the said defendant was then and there in the course of committing or attempting to commit the offense of robbery, then you will find the defendant guilty of capital murder as charged in the indictment.

15

Thus, the requirement that capital murder requires the specific intent to kill is met in the application paragraph. *See Threadgill,* 146 S.W.3d at 655. Because there was no objection at trial, the record must demonstrate that appellant suffered egregious harm. *See Marshall,* 479 S.W.3d at 843. Remembering that the application paragraph is that portion of the charge that authorizes the conviction, this application paragraph properly sets forth what the jury is required to find in order to convict appellant of the charge of capital murder. *See Yzaguirre v. State,* 394 S.W.3d 526, 530 (Tex. Crim. App. 2013).

In reviewing the entire record to include the entire jury charge, state of the evidence, the argument of counsel, and all other portions of the record as a whole, we find appellant suffered no egregious harm. *See Villareal v. State,* 453 S.W.3d 429, 433 (Tex. Crim. App. 2015). This is so because the trial court's application paragraph, as set forth above, properly directed the jury to the elements the State was required to prove. *See Yzaguirre,* 394 S.W.3d at 530. The state of the evidence was such that the issue was one of identity. Much of the testimony was directed at showing that appellant was at the scene where the murder occurred. Additionally, the jury heard the eye witness testimony of Patterson and, apparently, as was its prerogative, chose to believe it. *See Brooks*, 323 S.W.at 899. As to the argument of counsel, our review of the record reveals that neither the appellant nor the State made any reference to what we have assumed, *arguendo,* to have been error. In short, appellant suffered no egregious harm.

Having determined that the trial court did not err in its charge and further, even if we were to assume that there was error, that appellant did not suffer any egregious harm by the assumed error, we overrule appellant's issue.

16

Appellant's next complaint regarding the court's charge is that the trial court erred in not *sua sponte* giving a lesser-included charge on felony murder. Our review of the record reflects that appellant neither requested the lesser-included felony murder charge nor did he object to the failure of the trial court to include a lesser-included charge on felony-murder.

Unlike normal charge error, a lesser-included charge is considered a defensive issue charge. *Tolbert v. State,* 306 S.W.3d 776, 780 (Tex. Crim. App. 2010). Defensive issues are not a part of the law applicable to the case until such time as they are requested timely from, or a timely objection to the failure to include them is made to, the trial court. *See id.* (citing *Posey v. State,* 966 S.W.2d 57, 62 (Tex. Crim. App. 1998) (en banc)). Accordingly, the trial court did not err by failing to *sua sponte* give a lesser-included charge on felony-murder.

Finally, appellant urges this Court to find that the trial court committed reversible error when it instructed the jury that the State need not "prove guilt beyond all possible doubt." As appellant recognizes, the Second Court of Appeals has passed directly on this issue in *Vosberg v. State,* 80 S.W.3d 320, 324 (Tex. App.—Fort Worth 2002, pet. ref'd), and reaffirmed in the latter case of *Matthews v. State,* 478 S.W.3d 781, 782 (Tex. App.—Fort Worth 2015, no pet.). It is not error for the trial court to give the foregoing instruction as it is not a definition of "beyond a reasonable doubt." *See Matthews,* 478 S.W.3d at 782.[6] Appellant's contention to the contrary is overruled.

---

[6] While not error to make the statement in the charge, the better practice would be to leave it out.

Text Messages

Appellant's final issue complains that the trial court erred by admitting evidence of text messages from appellant's brother, Shawn. Appellant contends that the probative value of the text messages was substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence. *See* TEX. R. EVID. 403.

Standard of Review

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *See Martinez v. State,* 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). A trial court abuses its discretion when its determination is beyond the zone of reasonable disagreement on the issue at hand. *See id.* We apply the same abuse of discretion standard to our determination regarding the probative value of the evidence at issue being substantially outweighed by the danger of unfair prejudice. *See id.*

Analysis

According to the record, the text messages at issue were four in number and were between appellant and his brother, Shawn. There were a series of ten text messages between the two that were admitted into evidence. The gist of the messages were that Shawn advised appellant to get rid of his phone and obtain a prepaid phone, suggestions with which appellant agreed. Next, Shawn advised appellant he could get away "with this" if he played his cards right. Further, Shawn advised appellant to make sure no one was talking to the police and that a particular officer was not looking for him. Again, appellant agreed and advised the officer had not seen him in seven

months. Shawn asked specifically if appellant was sure that no one saw him, and appellant said, "Yea."

Appellant contends that the texts at issue have a very limited probative value because Shawn had no personal knowledge of the events giving rise to the shooting. Second, he maintains, the statements do not show to what Shawn was referring. Finally, appellant argues, there is no assurance that it is Shawn sending the texts. Appellant then goes on to compare the perceived prejudice in allowing the texts into evidence and concludes that the texts are extremely prejudicial. Pursuant to appellant's theory, the prejudicial impact of the texts is heightened because identity of appellant as the shooter was the central issue at the trial.

The State's position is that the texts are extremely relevant because they demonstrate a consciousness of guilt on the part of appellant. Further, the State agrees with appellant that identity was the central issue in the trial because appellant took the stand and denied being the shooter and, in fact, denied being in the apartment complex at the time of the shooting.

We begin our analysis by looking at Texas Rule of Evidence 403.[7] Rule 403 is as follows:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issue, misleading the jury, undue delay, or needlessly presenting cumulative evidence.

---

[7] Further reference to the Texas Rules of Evidence will be by reference to "Rule _____."

*See* Rule 403. Relevant evidence is presumed to be more probative than prejudicial. *See Hammer v. State,* 296 S.W.3d 555, 568 (Tex. Crim. App. 2009). Only when there is a "clear disparity between the degree of prejudice of the offered evidence and its probative value" will the evidence be excluded. *See id.* (quoting *Conner v. State,* 67 S.W.3d 192, 202 (Tex. Crim. App. 2001)).

When reviewing a challenge to admitted evidence pursuant to Rule 403, we are reviewing the trial court's analysis of the balance of "(1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by the jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted." *Gigliobianco v. State,* 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). With the foregoing in mind, we turn to our review of the trial court's balancing of those factors.

The identity of the shooter was the primary issue tried during the guilt/innocence phase of the trial and heavily impacts the analysis of the admissibility of the text message evidence. Beginning with probative value, the record reflects that appellant admitted that he had been at the apartment complex but had left and knew nothing of the murder. Yet, the gist of the text communications was concerned with whether anyone might have seen appellant. Further, the text communications, at a minimum, suggest appellant was attempting to flee from an area that he thought might lead to him

20

being charged with a crime. Additionally, there was the text that appellant "could get away with this," "this" being the subject of the jury's inquiry. These text messages were at least circumstantial evidence tending to connect appellant with the murder. *See Ramsey,* 473 S.W.3d at 808. This evidence was probative on the issue of appellant's consciousness of guilt. The evidence was probative and that factor weighs in favor of admissibility. This factor further underscores the State's need to use this evidence, which again weighs in favor of admissibility.

In reviewing the record to determine if this evidence might lead to the conclusion that the jury made its decision on an improper basis, we find nothing to support that particular conclusion. Neither can we conclude that the jury was distracted or confused by the evidence. While the record does reflect that the jury did request to see the text messages during their deliberations, this was one of four items the jury requested. A review of each reflects that the items were each connected with possible identity evidence. In light of the fact that identity was the primary issue at trial, this is not surprising, nor does it support appellant's theory that the texts lead to a verdict based on some irrational but nevertheless indelible impression as appellant suggests. The evidence was simply evidence that the jury heard that was suggestive of appellant's guilty conscious.

Finally the presentation of this evidence took very little time. In fact, the portion in front of the jury was no more than 25 minutes long. The argument regarding the admissibility was conducted out of the jury's presence and may have lengthened the trial by a couple of hours; however, the entire trial was conducted over a period of a

week.  Therefore, we find that the introduction of the evidence did not unduly lengthen the trial.

Accordingly, we find that the trial court's analysis of the issues pursuant to a Rule 403 objection was correct.  *See Gigliobianco,* 210 S.W.3d at 641–42.  Thus, the trial court did not abuse its discretion in admitting the evidence regarding the texts from Shawn into evidence.  *See Martinez,* 327 S.W.3d at 736.  Appellant's issue is overruled.

## Conclusion

Having overruled all of appellant's issues, we affirm the judgment of conviction as entered.

Mackey K. Hancock
Justice

Do not publish.