COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-362-CR
  
  
ADALBERTO 
PONCE-DURON                                                  APPELLANT
  
V.
  
THE 
STATE OF TEXAS                                                                  STATE
  
  
------------
 
FROM 
THE 367TH DISTRICT COURT OF DENTON COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
        In 
eight points, Appellant Adalberto Ponce-Duron appeals his capital murder 
conviction, claiming that 1) the trial court improperly granted the State’s 
motion to strike four potential jurors for cause, 2) the trial court erred in 
failing to suppress his videotaped statements, 3) business record evidence was 
improperly excluded, 4) the trial court improperly admitted extraneous evidence 
of gang activity and hearsay evidence, and 5) there was jury charge error.  
We affirm.
Factual and 
Procedural Background
        On 
September 15, 2002, Stephanie Tacina and her boyfriend Jerry Jackson were at the 
Mack Park Apartments in Denton watching a football game with friends.  When 
Jackson and several other men got into a friend’s car to go buy beer, Tacina 
became angry and threw a beer bottle behind the car as they were leaving.  
Jackson ran toward Tacina, swearing at her and shoving her into a brick wall, 
causing her to hit her head.  The men left to buy more beer and while they 
were gone another tenant at the apartments called 911 after noticing that Tacina 
was hurt.  Police and an ambulance arrived about ten minutes later.  
Jackson was detained at the scene along with two other individuals, but only 
Jackson was arrested.  Appellant was at the scene and became upset when 
police arrested Jackson.
        Ivan 
Holbert, who was visiting his girlfriend at the same apartments, witnessed 
Jackson’s arrest. Holbert testified that after Jackson’s arrest he saw five 
people including Appellant get into a car; they told Holbert they were going to 
look for Tacina.  Holbert also said he overheard Appellant say that he was 
going to kill Tacina when he found her.
        Security 
videotape obtained from the Denton Regional Medical Center, where Tacina had 
been taken for her possible head injury, showed Appellant leaving the hospital 
with a female wearing a green tube top.  The female was later identified as 
Tacina.  Tasia Hoffman, who was acquainted with some of the individuals in 
the car, testified that she saw the same people that Holbert testified about 
around 11:30 p.m. that same evening.  She also testified that Tacina was in 
the backseat of the car and that she had bruises, burns, and bloody hair.  
Hoffman stated that Appellant and the others in the car drove to her house in an 
attempt to dump Tacina’s body there.  Hoffman said that Appellant 
appeared to be holding Tacina around the neck.  The group eventually left 
when Hoffman told them they could not leave the body at her house.  The 
following day, Amanda Doyle, one of the individuals who had been with Tacina in 
the car the previous night, asked Hoffman to go with her to see if Tacina was 
alive.  After Hoffman returned home from going with Doyle to see if Tacina 
was alive, she called her ex-boyfriend and told him where she had been. Hoffman 
took her ex-boyfriend to where Tacina’s body had been left.  After going 
with Hoffman to see Tacina’s body, her ex-boyfriend called the police.
        Appellant 
was arrested on September 21, 2002 in Rockingham County, North Carolina.  
He was interviewed twice regarding the death of Tacina. In the first videotaped 
statement, he was questioned by North Carolina detectives and in the second 
videotaped statement, he was questioned by Texas detectives. In both videotapes, 
Appellant was read his Miranda rights, which he stated he understood.  He 
then proceeded to waive his right to remain silent and sign a waiver form.  
In both videotaped statements, Appellant admits going to the hospital with four 
other people to find Tacina; hitting her numerous times; choking her with his 
belt; pulling her from the car by the belt around her neck; cutting her throat 
with scissors; and stabbing her in the abdomen three or four times.  He 
claimed that others in the group continued to yell at him to do these acts and 
that some of the individuals made threats against him and his family so he felt 
he had no choice.  Appellant also admitted to cleaning up the car that was 
used in the crime and burning numerous blood-covered items in the grill behind 
his house.
        Conversely, 
at trial Appellant admitted going to the hospital, being present when evidence 
was destroyed the day after Tacina was killed, and confessing to the crime only 
because he feared for his and his family’s safety.  However, Appellant 
disputes his videotaped statements and testified that he did not kill or assault 
Tacina.  The jury found Appellant guilty of capital murder and the court 
assessed his sentence at life imprisonment.
Motion to 
Strike Jurors for Cause
        In 
his first point, Appellant contends that the trial court denied him a jury of 
his peers by allowing the State to ask improper commitment questions during voir 
dire, and then granting the State’s motion to strike four potential jurors for 
cause.  Appellant complains that during the State’s voir dire, various 
hypotheticals involving capital murder were discussed.  Appellant objected 
to one hypothetical used by the State on the grounds that it amounted to 
improper commitment questions; failed to distinguish between murder and felony 
murder under the law; and misstated the law by using the word “could” 
instead of “should.”
        To 
preserve a complaint for our review, a party must have presented to the trial 
court a timely request, objection, or motion that states the specific grounds 
for the desired ruling if they are not apparent from the context of the request, 
objection, or motion.  Tex. R. App. 
P. 33.1(a)(1); Mosley v. State, 983 S.W.2d 249, 265 (Tex. Crim. 
App. 1998) (op. on reh’g), cert. denied, 526 U.S. 1070 (1999).  
Further, the trial court must have ruled on the request, objection, or motion, 
either expressly or implicitly, or the complaining party must have objected to 
the trial court’s refusal to rule.  Tex. R. App. P. 33.1(a)(2); Mendez v. 
State, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004).
        Appellant 
failed to timely object at the time when the State asked its questions, and only 
objected after a considerable amount of time had elapsed.  Appellant did 
not preserve error for appellate review.  We overrule Appellant’s first 
point.
Motion to 
Suppress
        In 
his second point, Appellant complains the trial court violated his right to 
remain silent by failing to suppress his videotaped statements.  
Specifically, he claims that the videotaped confessions were involuntarily given 
because he had not slept much the night before, was fearful for his mother’s 
life, and did not understand his rights due to a head injury he received as a 
child.  The determination of whether a statement is voluntary is a mixed 
question of law and fact.  Garcia v. State, 15 S.W.3d 533, 535 (Tex. 
Crim. App. 2000).  We review a trial court's ruling on a motion to suppress 
under a bifurcated standard of review, giving almost total deference to the 
trial court's determination of historical facts that turn on credibility and 
demeanor and reviewing de novo the court's application of the law to the 
facts.  Carmouche v. State, 10 S.W.3d 323, 327 (Tex. Crim. App. 
2000); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  
Involuntary confessions offend due process when they flow from the improper 
conduct of law enforcement officials.  Colorado v. Connelly, 479 
U.S. 157, 167, 107 S. Ct. 515, 522 (1986); Gomes v. State, 9 S.W.3d 373, 
377 (Tex. App.—Houston [14th Dist.] 1999, pet. ref’d).  In determining 
whether a given confession was the result of improper official conduct, we 
review the totality of the circumstances, considering such factors as the length 
of detention and interrogation, the presence or absence of physical brutality, 
the location and hour of the questioning, and whether the defendant was 
permitted access to his family or an attorney.  Gallegos v. Colorado, 
370 U.S. 49, 51-52, 82 S. Ct. 1209, 1212 (1962); Lane v. State, 933 
S.W.2d 504, 512 (Tex. Crim. App. 1996).
        The 
record reflects Appellant took the stand during the suppression hearing and 
testified that he could barely read and write.  He also testified that he 
did not read the waiver form before he signed it.  Appellant testified that 
he had a hard time comprehending things because he had not slept and had an old 
head injury that made it difficult for him to understand.  However, during 
Appellant’s second videotaped statement, he indicated that he had eaten and 
slept prior to giving his statement.  Appellant indicated in his first 
videotaped interview with North Carolina detectives that he understood each 
right read to him and that he was willing to speak with the detectives.  He 
also stated that he did not want a lawyer “right now.”  Later in his 
second videotaped interview with Texas detectives, he indicated for the second 
time that he understood his rights and was willing to speak to the 
detectives.  Furthermore, during the suppression hearing Appellant 
testified that he spoke to the detectives voluntarily.  Using the 
appropriate standard of review, and based on the totality of the circumstances, 
we conclude the trial court did not err in denying Appellant’s motion to 
suppress.  Appellant’s second point is overruled.
Evidentiary 
Rulings
        Appellant 
complains in his sixth, seventh, and eighth points that the trial court erred 
when it ruled on three different evidentiary issues.  The standard of 
review for a trial court’s ruling under the rules of evidence is abuse of 
discretion.  Sauceda v. State, 129 S.W.3d 116, 120 (Tex. Crim. App. 
2004).  The test for abuse of discretion is not whether, in the opinion of 
the reviewing court, the facts present an appropriate case for the trial 
court’s action; rather, it is a question of whether the court acted without 
reference to any guiding rules or principles, and the mere fact that a trial 
court may decide a matter within its discretionary authority differently than an 
appellate court does not warrant reversal of a trial court’s ruling on the 
admission or exclusion of evidence as long as the ruling is within the zone of 
reasonable disagreement.  See Robbins v. State, 88 S.W.3d 256, 
259-60 (Tex. Crim. App. 2002).
        In 
his sixth point, Appellant argues the trial court violated Rule 107 by excluding 
portions of a business record.  See Tex. R. Evid. 107.  During the 
State’s case, a document from the county jail regarding Appellant’s desire 
to speak to a counselor was admitted for impeachment purposes.  Appellant 
argues that the entire document should have been admitted so that the jury was 
not left with an improper impression.  Appellant points out that the 
partial admission of the document mistakenly infers that Appellant was seeking 
assistance for his “problems” while in jail, and that those “problems” 
were related to him being guilty.  Furthermore, Appellant contends that the 
trial court’s refusal to admit the entire document violated the evidentiary 
rule of “optional completeness” and his constitutional right to offer 
evidence in his own behalf.
        “Rule 
107 is one of admissibility and permits the introduction of otherwise 
inadmissible evidence when that evidence is necessary to fully and fairly 
explain a matter 'opened up' by the adverse party.”  West v. State, 
121 S.W.3d 95, 103 (Tex. App.—Fort Worth 2003, pet. ref'd).  “The 
so-called rule of optional completeness takes effect when other evidence has 
already been introduced but is incomplete and misleading.”  Jones v. 
State, 963 S.W.2d 177, 182 (Tex. App.—Fort Worth 1998, pet. ref'd).
        The 
record reflects that the document from the jail was admitted for impeachment 
purposes only and not for the contents of the writing.  The State contends 
that Appellant claimed that he could not read or write and this document 
impeached his testimony.  Furthermore, the trial judge instructed the jury 
that the document was to be considered for the limited purpose of 
impeachment.  In light of the purpose for which the document was admitted, 
and the court’s instruction to the jury, we hold that asking a question for 
impeachment purposes does not render the entire document admissible under the 
rule of “optional completeness.”  See Sauceda, 129 S.W.3d at 
117.  We overrule Appellant’s sixth point.
        In 
his seventh point, Appellant claims the trial court improperly admitted 
extraneous evidence of gang activity of Appellant and that the evidence was 
inflammatory and should have been excluded under Rule 404(b).  See Tex. R. Evid. 404(b).  Holbert, a witness 
who was present the night of Jackson’s arrest, was allowed to testify during 
trial that he overheard Appellant state, “I’ve got this on my set, H.L.V.; 
when I find her, I’m going to kill her.”  The witness then testified 
that H.L.V. meant high-life villain.  The State points out that the word 
gang was never used in the witness’ testimony, but does not dispute that the 
jury could have inferred a gang association.
        Evidence 
is admissible under Rule 404(b) if it is relevant and not offered for the 
purpose of proving action in conformity therewith on a particular occasion, but 
is offered for other purposes such as proof of motive, opportunity, intent, 
preparation, plan, knowledge, identity, or absence of mistake or accident.  
Tex. R. Evid. 404(b).  In 
this case, the State argues that Appellant’s statement made on the night of 
the incident conflicts with his defensive theory that the group members were 
merely going to beat up the victim and not kill her, and is relevant because it 
proves that he had intent and knowledge.  Furthermore, the State argues it 
was not hearsay since it was an admission by a party-opponent.  See Tex. R. Evid. 801(e)(2)(A); Roy v. 
State, 997 S.W.2d 863, 866 (Tex. App.—Fort Worth 1999, pet. ref’d).  
We agree.  Appellant’s seventh point is overruled.
        In 
his eighth point, Appellant argues that the trial court erred by allowing 
inadmissible hearsay evidence, which violated Appellant’s constitutional right 
to confrontation.  Specifically, he complains about two statements made by 
members of the group he was with on the night of Tacina’s murder.  
Hearsay is a statement, other than one made by the declarant while testifying at 
the trial or hearing, offered in evidence to prove the truth of the matter 
asserted. Tex. R. Evid. 801(d).  The 
admission of hearsay evidence against a criminal defendant implicates the 
Confrontation Clause of the Sixth Amendment because the defendant is not 
afforded the opportunity to confront the out-of-court declarant.  U.S. Const. amend. VI.  The central 
issue is whether the statements made by other members of the group are 
admissible against the defendant.  Therefore, the first issue we must 
address is not whether the statements should have been admitted under the rules 
of evidence but whether the admission of the statements violated Appellant’s 
Sixth Amendment right to confrontation.  In deciding this constitutional 
issue, we review the trial court’s ruling de novo.  See Muttoni v. 
State, 25 S.W.3d 300, 304 (Tex. App.—Austin 2000, no pet.).
        At 
the time of Appellant’s trial, a Sixth Amendment challenge to the 
admissibility of an out-of-court statement against the accused was governed by Ohio 
v. Roberts.  448 U.S. 56, 66, 100 S. Ct. 2531, 2539 (1980), overruled 
in part by Crawford v. Washington, 124 S. Ct. 1354, 1369 (2004).  In Roberts, 
to avoid a violation of the Confrontation Clause, hearsay must fall within a 
firmly rooted hearsay exception or must contain particularized guarantees of 
trustworthiness such that cross examination would probably add little, if 
anything, to the reliability of the evidence.  Id.  This 
standard was applied in several subsequent noteworthy decisions.  See 
Lilly v. Virginia, 527 U.S. 116, 119 S. Ct. 1887 (1999) (holding 
co-defendant’s confession incriminating defendant was not within a firmly 
rooted exception to the hearsay rule under Roberts standard); see also 
Idaho v. Wright, 497 U.S. 805, 110 S. Ct. 3139 (1990) (holding evidence must 
be “so trustworthy that adversarial testing would add little to its 
reliability”).  The Supreme Court overruled Roberts and set out a 
new test prohibiting the admission of “testimonial” statements when the 
witness is unavailable unless the defendant had the opportunity for 
cross-examination.  Crawford, 124 S. Ct. at 1369.  Now, 
different analyses apply to nontestimonial hearsay and testimonial 
hearsay.  See id. at 1374.  The court held that
 
[w]here nontestimonial hearsay is at issue, it is wholly consistent with the 
Framers’ design to afford the States flexibility in their development of 
hearsay law—as does Roberts, and as would an approach that exempted 
such statements from Confrontation Clause scrutiny altogether.  Where 
testimonial evidence is at issue, however, the Sixth Amendment demands what the 
common law required: unavailability and a prior opportunity for 
cross-examination.

Id.; 
see Wilson v. State, No. 02-03-490-CR, 2004 WL 2484835, at *2 (Tex. 
App.—Fort Worth Nov. 4, 2004, no pet. h.); see also Barela v. State, 
No. 08-02-00492-CR, 2004 WL 2192604, at *6 (Tex. App.—El Paso Sept. 30, 2004, 
no pet. h.) (not designated for publication).  According to Crawford, 
the use of the Roberts test has caused rationale of the Supreme Court’s 
cases to depart from the original intent of the framers of the 
Constitution.  124 S. Ct. at 1359-63.  Crawford declares that 
the Roberts test is too broad because it applies the same analysis 
whether the out-of-court statement is testimonial or not and too narrow because 
it admits ex parte testimonial statements “upon a mere finding of 
reliability.”  Id. at 1369.  Crawford contends that 
the Roberts test is inappropriate not only because its results were 
unpredictable, but also because its application allowed testimony the 
Confrontation Clause clearly meant to exclude.  Id. at 1371-72.
        The 
threshold question imposed by Crawford is whether the proffered 
out-of-court statement is “testimonial” in nature.  Id. at 
1364.  Although the Supreme Court declined to define “testimonial,” it 
identified certain categories that fall under the heading of testimonial 
statements, specifically, “ex parte in-court testimony or its functional 
equivalent, . . . extrajudicial statements contained in formalized testimonial 
materials, . . . [and] statements that were made under circumstances which would 
lead an objective witness reasonably to believe that the statement would be 
available for use at a later trial.”  Id.  According to Crawford, 
these types of statements bear the closest kinship to the abuses at which the 
Confrontation Clause was directed.  Id.  If the out-of-court 
statement is determined to be testimonial in nature, the Sixth Amendment 
requires that the witness be unavailable and that the defendant had a prior 
opportunity for cross-examination.  Id. at 1374.
        We 
turn to the statements made by the members of the group on the night of the 
incident and address whether those statements are testimonial in nature.  
The first statement Appellant objected to was a witness’ testimony that 
someone in Appellant’s group on the night of the murder said they were going 
to the hospital.  The witness did not identify the speaker, but testified 
it was one of the five individuals who left in the car.  Because the 
witness could not identify the declarant of the statement and the defendant 
could not cross-examine the individual, Crawford applies if the statement 
is testimonial.  See id.  Therefore, the first issue to 
determine is whether the statement is testimonial in nature.  We conclude 
that this statement is not testimonial and that Crawford does not apply.
        A 
number of factors support this determination.  First, Appellant by his own 
admission went to the hospital with the group of individuals who made this 
statement.  Second, the statement was not made in the context of any police 
investigation or interrogation.  Third, the statement was not made to any 
police officer or court official, but instead was made in the course of 
conversation.  Considering these facts set out in the record, we conclude 
the statement made by a group member on the night of the incident was not 
testimonial in nature and therefore did not trigger the cross-examination 
requirement of the Confrontation Clause as interpreted by the court in Crawford.  
See id.
        However, 
because we conclude the statement is nontestimonial in nature, we must determine 
if the statement falls within any hearsay exception.  See Tex. R. Evid. 803(2).  Appellant 
contends that the trial court erred in allowing inadmissible hearsay.  
Whether an out-of-court statement is admissible under an exception to the 
general hearsay exclusion rule is a matter within the trial court’s 
discretion.  Zuliani v. State, 97 S.W.3d 589, 595 (Tex. Crim. App. 
2003).  We review a trial court’s ruling admitting testimony under an 
abuse of discretion standard.  Salazar v. State, 38 S.W.3d 141, 
153-54 (Tex. Crim. App.), cert. denied, 534 U.S. 855 (2001).  
Therefore, we will reverse only if the trial judge’s decision was “so 
clearly wrong as to lie outside the zone within which reasonable persons might 
disagree.”  See Cantu v. State, 842 S.W.2d 667, 682 (Tex. Crim. 
App. 1992).  The appellate court’s role is limited to determining whether 
the record supports the trial court’s ruling.  Coffin v. State, 
885 S.W.2d 140, 149 (Tex. Crim. App. 1994).
        The 
Texas Rules of Evidence define hearsay as “a statement, other than one made by 
the declarant while testifying at the trial or hearing, offered in evidence to 
prove the truth of the matter asserted.”  Tex. R. Evid. 801(d).  The rules of 
evidence also provide categories not included as hearsay.  Tex. R. Evid. 801(e).  The State 
argues that the statement cannot be classified as hearsay. According to Rule 801 
a statement by a co-conspirator of a party during the course and in furtherance 
of the conspiracy, is not hearsay. Tex. R. Evid. 801(e)(2)(E).  The 
co-conspirator exception to the hearsay rule is not limited to prosecutions for 
conspiracy, but is a rule of evidence applicable to any offense.  Roy v. 
State, 608 S.W.2d 645, 651 (Tex. Crim. App. [Panel Op.] 1980).  Also 
under Rule 801, testimony classified as an adoptive admission is not 
hearsay.  See Paredes v. State, 129 S.W.3d 530, 534 (Tex. Crim. App. 
2004) (statements made by co-conspirators in defendant’s presence were 
admissible as adoptive admissions where defendant, by his actions and responses, 
showed agreement with the statement).  The statement Appellant complains of 
was made in his presence and by one of the individuals in the group, all of whom 
went to the hospital to locate Tacina.  By Appellants own admission he went 
to the hospital with the other members in the group in an attempt to find 
Tacina.  We hold that the challenged statement does not fall within the 
parameters of hearsay.
        The 
second statement objected to was Holbert’s testimony that he told the group 
that night “to leave Stephanie alone because it’s not her fault Jerry went 
to jail.”  When Appellant objected to the testimony the State responded 
that the statement was not offered for the truth of the matter asserted, but 
simply that it was said.  Appellant’s objection was overruled and the 
court gave the jury a limiting instruction regarding the statement.  An 
extrajudicial statement or writing that is offered to show what was said, rather 
than for the truth of the matter stated, does not constitute hearsay.  Dinkins 
v. State, 894 S.W.2d 330, 347 (Tex. Crim. App.), cert. denied, 516 
U.S. 832 (1995).
        Therefore, 
since the court recognized that the statement was not offered for the truth of 
the matter asserted and gave a limiting instruction to the jury, the statement 
is not hearsay within the definition of Rule 801.  Furthermore, the Crawford 
analysis applies to out-of-court testimonial statements by a declarant who is 
not available at trial.  Here the Confrontation Clause was not implicated 
since the declarant of the statement was the witness who was testifying, and 
Appellant was afforded the opportunity to confront the out-of-court declarant by 
cross examination.  See Carson v. Collins, 993 F.2d 461, 464 (5th 
Cir.), cert. denied, 510 U.S. 897 (1993).  We overrule Appellant’s 
eighth point.
Jury 
Instructions
        In 
his third point, Appellant argues the trial court erred by including a “law of 
parties” instruction in the jury charge.  At trial, Appellant timely 
objected regarding the instruction and argued that no evidence or testimony was 
presented at trial to support the inclusion of such an instruction.  The 
trial court overruled the objection.
        An 
instruction on the law of parties may be given whenever there is sufficient 
evidence to support a jury verdict that the defendant is criminally responsible 
under the law of parties.  Ladd v. State, 3 S.W.3d 547, 564 (Tex. 
Crim. App. 1999).  A person is criminally responsible as a party to an 
offense if the offense is committed by his own conduct, by the conduct of 
another for which he is criminally responsible, or by both. Tex. Penal Code Ann. § 7.01(a) (Vernon 
2003).  Moreover, a person is criminally responsible for an offense 
committed by the conduct of another if, acting with intent to promote or assist 
the commission of the offense, he solicits, encourages, directs, aids, or 
attempts to aid the other person to commit the offense.  Id. § 
7.02(a)(2).  In determining whether a defendant was a party, the trial 
court may look to events before, during, and after the commission of the 
crime.  Goff v. State, 931 S.W.2d 537, 545 (Tex. Crim. App. 1996), cert. 
denied, 520 U.S. 1171 (1997).  Furthermore, if the evidence clearly 
supports the defendant’s guilt as a principal, error, if any, is 
harmless.  Ladd, 3 S.W.3d at 564-65.
        In 
the present case, the evidence was sufficient to support a jury verdict that 
Appellant was criminally responsible under the law of parties.  Appellant 
admitted that he went to the hospital with the other group members and he went 
there with the intent to lure Tacina into the car.  Holbert testified at 
trial that on the night Tacina was killed, Appellant said he was going to kill 
Tacina when he found her.  Finally, Hoffman testified that she saw 
Appellant in a car with the victim and he appeared to be restraining her.  
The jury could infer from this evidence that Appellant acted with the intent to 
promote or assist the commission of the murder, and solicited, encouraged, 
directed, aided, or attempted to aid the members of the group in killing 
Tacina.  See Tex. Penal Code 
Ann. § 7.02(a)(2).  Additionally, in view of the trial testimony 
and Appellant’s videotaped confessions, there was sufficient evidence for the 
jury to find Appellant guilty as a principal.  We overrule Appellant’s 
third point.
        In 
his fourth point, Appellant complains the trial court erred when it failed to 
instruct the jury on renunciation as an affirmative defense.  At trial, 
Appellant requested an instruction under section 15.04(b),[2] 
which allows an affirmative defense to prosecution under section 15.02.[3]  Section 15.02 deals with the crime of criminal 
conspiracy.  During the trial Appellant objected to the jury instruction by 
stating, “If the court is going to allow the State an application paragraph on 
conspiracy that is not in the indictment or that he’s been charged with, then 
we’re going to request an instruction under Section 15.04(b), as an 
affirmative defense to conspiracy, the renunciation defense.”
        A 
review of the record finds that the jury charge does not contain any of the 
conspiracy language contained in section 7.02(b),[4] 
which Appellant complains of, but instead includes the language of section 
7.02(a),[5] which is unrelated to the conspiracy 
objection Appellant made at trial.
        Appellant’s 
point on appeal is not consistent with his trial objection.  Appellant 
complains that he was entitled to a jury charge of renunciation under 15.04(a),[6] which allows an affirmative defense under section 15.01,[7] criminal attempt.  Neither the indictment nor the 
jury charge reference the crime of criminal attempt under this section.  In 
fact, Appellant is charged in the indictment with capital murder. See id. 
§ 19.03(a)(2) (Vernon Supp. 2004-05).  Therefore, Appellant’s point has 
not been preserved for review.  We overrule Appellant’s fourth point.
        In 
his fifth point, Appellant contends that the trial court erred by giving a 
definition of reasonable doubt in the jury instruction.  Appellant 
specifically complains of the following portion of the trial court’s jury 
instruction: “It is not required that the prosecution prove guilt beyond all 
possible doubt; it is required that the prosecution’s proof excludes all 
‘reasonable doubt’ concerning the defendant’s guilt.”  Appellant 
argues that this instruction violates Paulson v. State, which states it 
is better practice not to provide a definition of reasonable doubt.  28 
S.W.3d 570, 573 (Tex. Crim. App. 2000).
        This 
court has reviewed this identical issue several times, in Vosberg v. State 
and its progeny, and ruled against Appellant’s position.  80 S.W.3d 320, 
324 (Tex. App.—Fort Worth 2002, pet. ref’d); see Best v. State, 118 
S.W.3d 857, 865 (Tex. App.—Fort Worth 2003, no pet.) (no error where same 
language included over objection); see also Blackburn v. State, No. 
2-02-158-CR, 2003 WL 22311253, at *1 (Tex. App.—Fort Worth Oct. 9, 2003, pet. 
ref’d) (not designated for publication) (same); Minor v. State, 91 
S.W.3d 824, 827-29 (Tex. App.—Fort Worth 2002, pet. ref’d) (same).  We 
reaffirm our decision in Vosberg.  Point five is overruled.
Conclusion
        Having 
overruled Appellant’s eight points on appeal, we affirm the trial court’s 
judgment.
 
  
  
                                                                  DIXON 
W. HOLMAN
                                                                  JUSTICE
   
  
PANEL 
F:   HOLMAN, WALKER, and MCCOY, JJ.
 
WALKER, 
J. concurs without opinion.
 
DO 
NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: 
November 12, 2004


NOTES
1.  
See Tex. R. App. P. 47.4.
2.  
Tex. Penal Code Ann. § 15.04(b) 
(Vernon 2003).
3.  
Id. § 15.02.
4.  
Id. § 7.02(b).
5.  
Id. § 7.02(a).
6.  
Id. § 15.04(a).
7.  
Id. § 15.01.